**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHESTER SMITH,** | : | |
| **Plaintiff** | : | |
| v. | : | **CIVIL ACTION NO. 1:CV-06-2371** |
| **MICHAEL J. ASTRUE,** | : | **(CALDWELL, D.J.)** |
| **Commissioner of** | | **(MANNION, M.J.)** |
| **Social Security** | : | |
| **Defendant** | : | |

**REPORT AND RECOMMENDATION**

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's[1] decision denying the Plaintiff's claims for Disability Insurance Benefits, ("DIB"), and Supplemental Security Income, ("SSI"), under Titles II and XVI of the Social Security Act, ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f.

**I. PROCEDURAL HISTORY.**

The Plaintiff protectively filed applications for DIB and SSI on June 2, 2004, alleging disability since March 10, 2004, due to right rotator cuff tear, herniated discs in the cervical spine and numbness in the fingers. (TR. 42, 70). The state agency denied his claims initially. (TR. 29). The Plaintiff filed a timely request for a hearing (TR. 33), and a hearing was held before an

---

[1] We have substituted the present Social Security Commissioner, Michael J. Astrue, as the Defendant herein.

Administrative Law Judge ("ALJ") on June 13, 2006. (TR. 194-217). The Plaintiff, accompanied by a non-attorney representative, testified and a vocational expert ("VE") testified at the hearing. (TR. 196-216). The Plaintiff was denied benefits pursuant to the ALJ's decision of July 13, 2006. (TR. 13-22).

The Plaintiff requested review of the ALJ's decision. (TR. 12). The Appeals Council denied his request on October 6, 2006, thereby making the ALJ's decision the final decision of the Commissioner. (TR. 8-10). 42 U.S.C. § 405(g). That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 8 and 9).

## II. STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (2004).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. § 404.1520.

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment.  *See* 20 C.F.R. § 404.1520(c).  At step three, the Commissioner must determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4.  20 C.F.R. § 404.1520(d).

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue to step four and consider whether the Plaintiff establishes that he is unable to perform his past relevant work. 20 C.F.R. §§ 404.1520(e)-(f). The Plaintiff bears the burden of demonstrating an inability to return to his past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

In the instant matter, the ALJ proceeded through the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Act. (TR. 16). At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful work activity since his alleged disability onset date, March 10, 2004. (TR. 17). At step two, the ALJ concluded that the Plaintiff's status post right rotator cuff surgery, degenerative disc disease of the cervical spine, obesity, and decreased grip strength on the right secondary to degenerative disc disease, were severe within the meaning of the Regulations. (TR. 17). The ALJ then found that Plaintiff's depression and hypertension were not severe within the meaning of the Regulations. (TR. 18).

At step three, the ALJ found that Plaintiff's severe impairments were not severe enough, either singly or in combination, to meet or medically equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (TR. 18).

At step four, the ALJ found that the Plaintiff is able to perform his past

4

relevant work as a factory worker and escort driver. (TR. 21). The ALJ found at step five that the Plaintiff has the residual functional capacity ("RFC") to perform a limited range of light work. (TR. 18-20). Based on the testimony of the impartial VE, the ALJ found that a significant number of other jobs exist in the local, regional and national economies that the Plaintiff could perform. (TR. 21). Thus, the ALJ concluded that the Plaintiff was not disabled within the meaning of the Act. (TR. 21). 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## IV.  BACKGROUND.

### A.  Factual Background.

The Plaintiff, fifty-three years old on the date of the ALJ's decision, was considered a "person closely approaching advanced age" under the Regulations. (TR. 199). 20 C.F.R. §§ 404.1563 and 416.965. He completed ninth grade in special education classes. (TR. 74, 199). Plaintiff testified that he can read and write, though not well. (TR. 199).

Plaintiff has past work experience as a factory worker, forklift driver, laborer and team leader. (TR. 200-201). Plaintiff testified that he last worked in 2002. (TR. 200).

Plaintiff testified that he has pain in his ankles when he walks and pain in his legs. (TR. 201). His back bothers him, he cannot straighten his hands due to arthritis, he shakes and has a herniated disc in his neck. (TR. 201). Plaintiff takes Vicodin, Xanax, Flexeril and blood pressure pills. (TR. 201). Plaintiff stated that the medications are effective, however they make him tired and he naps everyday for a couple of hours. (TR. 201-202). He stated that the pain is in the lower part of his back and it feels as though someone is kicking him. (TR. 207). Plaintiff underwent surgery in 2004 but his neck and shoulders still bother him. (TR. 207-208).

To alleviate his pain, Plaintiff walks to and from the mailbox and paces.

5

(TR. 202). He stated that he can stand for about one hour, while moving around, but if he stands too long his ankles and knees begin to hurt. (TR. 202, 205). Plaintiff is able to stand in one spot for ten to fifteen minutes. (TR. 205). Plaintiff can sit for about one-half hour, or more, in a comfortable chair, but if he sits too long it is difficult to get up. (TR. 202). Plaintiff testified that he can carry about four grocery bags at a time, depending on their weight, but usually no more than ten pounds. (TR. 203, 206).

Due to the arthritis in Plaintiff's hands, he has a hard time closing them in the morning. (TR. 203). He has a hard time holding objects and sometimes drops things. (TR. 203). Plaintiff is able to cook, feed himself and take care of his own personal needs. (TR. 203-204). Plaintiff is also able to wash dishes, with rest. (TR. 207). Plaintiff testified that cold temperatures cause him pain.

During the day, Plaintiff stated he does not do much, except watch television. (TR. 204-205). He attempted to go fishing but was unable to cast. Plaintiff gets along well with his family, friends and neighbors. (TR. 209). He has never been hospitalized for depression or any other mental condition. (TR. 209).

Vocational expert, George Starosta, testified that Plaintiff is an individual closely approaching advanced age with limited education. (TR. 210). The VE classified Plaintiff's past work as a laborer as light, unskilled work activity. His work as an escort driver is classified as light, semi-skilled work. His work as a forklift driver is classified as medium, semi-skilled work. Plaintiff's work in a plastic factory and hot water heater factory are classified as light, unskilled work. (TR. 211). Plaintiff's work as a helper at a boiler maker is classified as heavy, unskilled work. (TR. 211). Plaintiff's work laying carpet is classified as medium to heavy, unskilled work. (TR. 211).

The ALJ asked the VE to hypothetically consider an individual with the same residual functional capacity as the Plaintiff who is able to occasionally

lift and carry twenty pounds, frequently lift and carry ten pounds; stand, walk and sit for six hours in an eight-hour day; push and pull with the limitation of lifting and carrying twenty pounds occasionally and ten pounds frequently; occasionally climb, occasionally reach with the right upper extremity; with occasional handling, feeling and fingering; would not be around hazardous machinery and unprotected heights; would not require climbing ladders, ropes and scaffolding; and would not be exposed to extreme temperatures or extreme humidity. (TR. 211-212).

The VE testified that Plaintiff would be able to perform his past relevant work as a worker in a plastic factory, an escort driver and a forklift driver. (TR. 212). The VE then testified that such an individual could also perform other work with the same driving skills as Plaintiff's past relevant work. He identified the jobs of a van driver, with 1,200 available jobs in the region, 14,000 available jobs in the state, and 700,000 plus available jobs in the national economy; a messenger delivering merchandise with 800 available jobs in the region, 9,000 available jobs in the state, and 400,000 plus available jobs in the national economy; and a limousine driver with 1,050 available jobs in the region, 58,000 available jobs in the state, and 800,000 plus available jobs in the national economy. (TR. 213).

The VE then testified that such an individual would also be able to perform unskilled work as a bench assembler with 1,200 available jobs in the region, 15,000 available jobs in the state, and 1,000,000 plus available jobs in the national economy; a bench packager with 2,500 available jobs in the region, 30,000 available jobs in the state, and 2,000,000 plus available jobs in the national economy; and an inspector with 1,050 available jobs in the region, 15,000 available jobs in the state, and 800,000 plus available jobs in the national economy. (TR. 214).

The VE stated that if Plaintiff's testimony were accepted as true and

7

credible, he would not be able to perform an eight-hour per day, five day a week job. (TR. 214). The VE also stated that if the hypothetical individual required a nap everyday, he would not be able to perform the previously identified jobs. (TR. 214-216).

### B. *Medical Background.*

Raphael Kon, D.O., is Plaintiff's primary care physician. On March 29, 2004, Plaintiff underwent an MRI of the cervical spine which revealed nonspecific straightening of the cervical curve; multilevel degenerative changes most severe at C5-6 and at C3-4; and disc herniation and stenosis. (TR. 135-136).

On April 23, 2004, Dr. Kon completed a Pennsylvania Department of Public Welfare Employability Assessment Form. (TR. 129-130). Dr. Kon diagnosed degenerative disc disease and opined that Plaintiff was permanently disabled. (TR. 130).

Plaintiff treated with William P.H. Charlton, M.D., on June 9, 2004. (TR. 126, 158). Dr. Charlton noted Plaintiff had a painful arc, pain and weakness in scaption with 4/5 strength, and tenderness over the acromion and the AC joint with a positive crossover test. (TR. 126). He noted that Plaintiff's right shoulder did not improve with exercise. Dr. Charlton opined that Plaintiff would be a good candidate for arthroscopic rotator cuff repair and distal clavicle excision. (TR. 126). Plaintiff understood that his numbness is associated with his neck and it would not improve with surgery. (TR. 126). On June 23, 2004, Dr. Charlton performed right shoulder arthroscopy with rotator cuff debridement, acromioplasty, bursectomy, and distal clavicle excision. (TR. 116-124).

On October 14, 2004, Dr. Kon evaluated Plaintiff. (TR. 142-145). Dr. Kon indicated that Plaintiff has decreased range of motion with flexion,

extension, rotation and circumferential rotation and there was tenderness over the joint. (TR. 144-145). Plaintiff's right elbow revealed normal flexion and extension. (TR. 145). There was interosseous wasting of the right hand and Plaintiff had difficulty using a zipper, buttoning, and picking up coins with his right upper extremity. (TR. 145). Dr. Kon's impressions were right upper extremity weakness; degenerative disc disease of the cervical spine; history of depression, though not on medications; history of peptic ulcer disease, in remission; status post hunting accident with shrapnel on his right chest status post right thoracotomy; and history of obesity. (TR. 145).

On October 14, 2004, Dr. Kon completed a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities. (TR. 146-149). Dr. Kon found that Plaintiff could frequently lift and carry up to ten pounds; and he had no limitations with standing, walking or sitting. (TR. 146). Dr. Kon found that Plaintiff was limited in the upper extremity with pushing and pulling. He found that Plaintiff had no postural limitations. (TR. 147). Dr. Kon found that Plaintiff was limited in reaching, handling, fingering and feeling. (TR. 147). Dr. Kon also noted that Plaintiff should avoid temperature extremes and wetness. (TR. 147).

A Disability Determination Service ("DDS") physician completed a Physical Residual Functional Capacity Assessment on October 22, 2004. (TR. 150-157). The DDS physician's primary diagnoses were status post right shoulder surgery and degenerative disc disease, and the secondary diagnosis was status post right thoracotomy. (TR. 150). The doctor found that Plaintiff could occasionally lift and/ or carry twenty pounds; frequently lift and/ or carry ten pounds; stand and/ or walk and sit (with normal breaks) for a total of about six hours in an eight-hour workday; was limited with pushing and/ or pulling in the right upper extremity; could occasionally or never climb a ladder or scaffolds; and he could frequently balance, stoop, kneel, crouch and crawl.

(TR. 152). The doctor found that Plaintiff was limited in reaching with the right upper extremity. (TR. 153). The doctor found no visual limitations, no communicative limitations and no environmental limitations. (TR. 153-154). The doctor found the Plaintiff only partially credible. (TR. 155). The doctor completed the RFC Assessment with a statement from a treating or examining source regarding Plaintiff's physical capacities, and he noted that his conclusions were significantly different from the treating/ examining source's conclusions. (TR. 156).

Plaintiff underwent an MRI of the right shoulder on January 10, 2005. (TR. 159-160, 177-178). The MRI was technically limited with evidence of a full thickness tear of the supraspinatus portion of the rotator cuff tendon measuring at least 15 mm in maximum dimension; atrophy of a moderate grade involving the supraspinatus muscle; and no labral tears or abnormalities of the bicipital tendon. (TR. 159-160, 177-178).

Dr. Charlton examined Plaintiff on January 19, 2005. (TR. 161). He noted that Plaintiff was sleeping at night and "back to full activity after shoulder surgery." (TR. 161). However, Plaintiff subsequently fell on his right arm and was unable to lift his arm and has persistent pain. Upon examination, Dr. Charlton noted that Plaintiff has pain with scaption and weakness, and positive impingement tests to a mild degree. (TR. 161). His impression was status post decompression with traumatic rotator cuff tear. Dr. Charlton noted this was a unique situation and Plaintiff has a new tear. Dr. Charlton thus recommended arthroscopic repair. (TR. 161).

Plaintiff underwent right shoulder arthroscopy, revision acromioplasty and rotator cuff repair on February 2, 2005. (TR. 166-167). Plaintiff underwent the procedure with no complications. (TR. 166).

On April 4, 2005, Plaintiff underwent x-rays of the right ankle and right wrist. (TR. 170). The right ankle x-ray revealed no fracture, dislocation or

other bone, joint or soft tissue abnormality, and ankle mortise is maintained. (TR. 170). The right wrist x-ray also revealed no fracture, dislocation or other bone, joint or soft tissue abnormality. (TR. 170). The doctor's ultimate conclusion was "within normal limits." (TR. 170).

Plaintiff continued to treat with Dr. Kon through May 2006 for treatment of degenerative disc disease, muscle pain and decreased grip strength. (TR. 173-176).

## V. DISCUSSION.

Plaintiff argues that the ALJ erred in the following ways: (1) by finding that Plaintiff is able to perform gainful employment on a daily basis; (2) by failing to give appropriate weight to the opinion of Plaintiff's treating physician; and (3) by failing to give appropriate weight to Plaintiff's subjective complaints. (Doc. 8 at 3).

### A. Whether the ALJ erred in finding that Plaintiff is able to perform gainful employment on a daily basis.

Plaintiff argues that the ALJ erred in finding that he is capable of performing gainful employment on a daily, consistent basis. (Doc. 8 at 4). The ALJ determined that Plaintiff retains the residual functional capacity to perform light work. (TR. 18).

Residual functional capacity is defined as follows:

> (a) *General.* Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations.

20 C.F.R. § 404.1545(a). Light work is defined as follows:

> b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job

11

> is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §404.1567(b).

The ALJ found that Plaintiff is capable of performing light work. The ALJ acknowledged that Plaintiff has degenerative disc disease of the cervical spine and underwent right shoulder surgery twice. (TR. 20). The ALJ considered all of Plaintiff's alleged impairments when making her RFC determination. (TR. 18-21).

The ALJ asked the vocational expert at the hearing about Plaintiff's abilities. As stated, the ALJ asked the VE to hypothetically consider an individual with the same residual functional capacity as the Plaintiff who is able to occasionally lift and carry twenty pounds, frequently lift and carry ten pounds; stand, walk and sit for six hours in an eight-hour day; push and pull with the limitation of lifting and carrying twenty pounds occasionally and ten pounds frequently; occasionally climb, occasionally reach with the right upper extremity; with occasional handling, feeling and fingering; would not be around hazardous machinery and unprotected heights; would not require climbing ladders, ropes and scaffolding; and would not be exposed to extreme temperatures or extreme humidity. (TR. 211-212).

The VE testified that Plaintiff would be able to do his past relevant work as a worker in a plastic factory, an escort driver and a forklift driver, as well as work as a van driver, a messenger delivering merchandise, a limousine driver, a bench assembler, bench packager, and an inspector. (TR. 212-213).

The VE also stated that if Plaintiff's testimony were accepted as true, he would not be able maintain a full-time job, and if he required a nap everyday, he would not be able to perform the previously identified jobs. (TR. 214-216).

The vocational expert was apprised of all the Plaintiff's functional limitations and thus took them into consideration when rendering his opinion. The Third Circuit has held, with respect to hypothetical questions posed to vocational experts, that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). A hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Clearly, the hypothetical did include all of the Plaintiff's limitations which are supported by the record and based in part on objective tests. Therefore, there is substantial evidence to support the vocational expert's conclusions.

Additionally, Plaintiff is not disabled pursuant to Medical-Vocational Rule 201.10. (Doc. 8 at 5; Doc. 9 at 13-14). At step four of the sequential evaluation process the ALJ found that Plaintiff is capable of performing his past relevant work. Thus, the Plaintiff was found not disabled and review need not proceed any further. The Plaintiff's vocational factors are considered at step five of the sequential evaluation process. However, because the ALJ concluded at step four that Plaintiff was not disabled, she did not use the Medical-Vocational Guidelines in rendering her disability determination.

In her decision, the ALJ noted that Plaintiff is capable of performing his past relevant work as a factory worker and escort driver. (TR. 21). The ALJ also found that Plaintiff is capable of performing work as a van driver,

messenger in merchandise delivery, limousine driver, bench assembler, bench packager, and an inspector. (TR. 21). We find that this is supported by the evidence and the ALJ properly determined that Plaintiff is able to perform gainful employment on a daily basis.

### B. Whether the ALJ erred by failing to give appropriate weight to the opinion of Plaintiff's treating physician.

Plaintiff argues that the ALJ erred by discounting the opinion of Dr. Kon, Plaintiff's treating physician and the agency's consultative examiner. (Doc. 8 at 6). Defendant counters that the ALJ adequately provided a detailed rationale for her findings. (Doc. 9 at 15). The Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310  (3d Cir. 2000). The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999) (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make

> "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent v. Schweiker*, 710 F.2d 110, 115.

*Id*. at 317-18. The ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). Although she must consider all medical opinions, the better an explanation a source provides for an opinion, particularly through medical signs and laboratory findings, the more weight [the ALJ] will give that opinion. 20 C.F.R. § 404.1527(d)(3). While treating physicians' opinions may be given more weight, there must be relevant evidence to support the opinion. 20 C.F.R. § 404.1527(d). Automatic adoption of the opinion of the treating physician is not required. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

Dr. Kon provided statements on April 23, 2004, and October 14, 2004. On the April 23, 2004 Department of Public Welfare Employability Assessment Form, Dr. Kon diagnosed degenerative disc disease and opined that Plaintiff was permanently disabled. (TR. 130). The ALJ found that this opinion was not entitled to controlling weight because it "is inconsistent with other substantial evidence of record." (TR. 20).

On the October 14, 2004 Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities, Dr. Kon found that Plaintiff could frequently lift and carry up to ten pounds; he had no limitations with standing, walking or sitting; he was limited in the upper extremity with pushing and pulling; he had no postural limitations; he was limited in reaching, handling, fingering and feeling; and should avoid temperature extremes and wetness. (TR. 146-147). Thus, Dr. Kon, Plaintiff's treating physician, determined that

Plaintiff is capable of performing work. The ALJ weighed the two conflicting opinions of Dr. Kon and ultimately determined that Plaintiff is capable of performing light work, consistent with Dr. Kon's October 2004 opinion.

"The only reasons for an ALJ to reject a treating physician's opinion are 'on the basis of contradictory medical evidence,' or if the opinion is unsupported by medical data." *Kurilla v. Barnhart,* 2005 WL 2704887, at *5 (E.D. Pa. Oct. 18, 2005) (quoting *Plummer,* 186 F.3d at 429 and citing *Newhouse v. Heckler,* 753 F.2d 283 (3d Cir.1985)). Here, the ALJ rejected the opinion Dr. Kon that Plaintiff was disabled because she found it inconsistent with the examination findings, the treatment history, Plaintiff's activities of daily living, and Dr. Kon's subsequent opinion in October 2004. (TR. 20). Based on the foregoing, we find that there is substantial evidence that the ALJ did not reject, without any basis, the opinion of Dr. Kon.

### C. Whether the ALJ erred by failing to give appropriate weight to Plaintiff's subjective complaints.

Finally, the Plaintiff argues that the ALJ erred in finding the Plaintiff not credible in his testimony regarding his pain and difficulties. (Doc. 8 at 6). The ALJ found that the Plaintiff was not completely credible and his testimony was not consistent with the medical evidence. (TR. 20).

When considering a claimant's subjective complaints of pain, an ALJ must engage in a two-step analysis. First, an ALJ must determine if the alleged disabling pain could reasonably result from the medically determinable impairment; and second, the ALJ must consider the intensity and persistence of the claimant's disabling pain, and the extent to which it affects his ability to work. *See Diaz v. Commissioner of Social Security*, 39 Fed. App'x 713, 714 (3d Cir. June 12, 2002).

At the same time, "[a]n ALJ must give serious consideration to a

claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985). Where in fact "medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." *Mason*, 994 F.2d at 1067-68 (citing *Carter v. Railroad Retirement Bd.,* 834 F.2d 62, 65 (3d Cir. 1987); *Ferguson,* 765 F.2d at 37).

The distinction between exertional and non-exertional limitations is discussed in 20 C.F.R. §404.1569a. Under that section, "[t]he classification of a limitation as exertional is related to the United States Department of Labor's classification of various jobs by various exertional levels (sedentary, light, medium, heavy, very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing and pulling." 20 C.F.R. §404.1569a(a). When the restrictions affect the claimant's ability to meet job demands other than strength demands, the limitations are non-exertional. Examples of such non-exertional limitations are difficulty functioning because of nervousness, anxiety, depression, difficulty seeing, hearing, maintaining concentration and remembering. 20 C.F.R. §404.1569a(c). In this case, Plaintiff alleges exertional and non-exertional limitations.

The ALJ thoroughly examined all of the evidence presented to her. She reviewed the medical records and the treating and examining physicians' notes. She also considered Plaintiff's testimony regarding his pain and daily activities and capabilities. The ALJ found "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (TR. 20).

"'[A]n ALJ's findings based on the credibility of the applicant are to be

accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." *Frazier v. Apfel*, 2000 WL 288246 (E.D. Pa. March 7, 2000).

The ALJ pointed to both medical evidence and evidence of the Plaintiff's activities of daily living which contradicted the Plaintiff's claims of total disability. The ALJ concluded that the medical record did not substantiate the extent of the Plaintiff's subjective complaints. (TR. 20). The ALJ noted that despite Plaintiff's allegations of disabling pain, there are no reports of physical therapy or pain management. (TR. 20). Plaintiff testified that his pain medication is effective. The ALJ noted that Plaintiff "is able to care for his personal needs. He cooks, shops, and does limited housework, including laundry. He can use a fork and knife, dial a touch tone phone, and use a remote control. He spends most of his time watching television which indicates his concentration is not significantly affected." (TR. 20, 100). Plaintiff also testified that he walks to alleviate his pain, he can stand for about one hour while moving around, he can stand for ten to fifteen minutes in one spot, he can sit for one-half hour, and he can lift less than ten pounds. (TR. 20, 99, 202-205). On his Disability Form, Plaintiff reported that he can climb nine to ten steps without stopping and he can walk 100 feet or more. (TR. 99). Based on these capabilities, the ALJ found that the intense symptoms the Plaintiff described are not capable of producing debilitating functional limitations. (TR. 20). The ALJ found that the activities Plaintiff stated he is capable of performing are inconsistent with allegations of being totally disabled. (TR. 18-20). Likewise, the DDS physician found Plaintiff to be only

no more

partially credible. (TR. 155).

An ALJ may not reject outright the opinion of a treating physician on her own credibility judgment. *Plummer*, 186 F. 3d at 429. Here, the ALJ did no such thing. The record contains the opinion of Plaintiff's treating physician, Dr. Kon. As discussed above, the ALJ found that the Plaintiff's impairments were severe, but not severe enough to meet or equal the criteria for establishing disability under the Regulations.

The ALJ did not ignore the allegations of disabling pain and exertional and non-exertional activities. She acknowledged Plaintiff's testimony regarding the pain. She then found the Plaintiff not wholly credible for the reasons previously stated. Thus, the Plaintiff's work activities and medical records constitute substantial evidence supporting the ALJ's determination that the Plaintiff was not fully credible.

## VI. RECOMMENDATION.

Based on the foregoing, it is recommended that the Plaintiff's appeal be **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated: September 27, 2007**
O:\shared\REPORTS\2006 Reports\06-2371.01.hhs.wpd